OPINION
Defendant-appellant Ernest Lee Hill appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of aggravated robbery, in violation of R.C. 2911.01. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On the evening of December 18, 1997, Louise Erichsen and her sixteen year old daughter, Christina, proceeded to the Palace Theater in downtown Canton, Ohio, where Christina had a dress rehearsal for a ballet in which she was performing. Mrs. Erichsen drove her vehicle to the parking lot on the corner of Market Avenue and Sixth Street, where she typically parked when visiting the Palace Theater. Because the parking lot was full, Mrs. Erichsen drove into a lot across the street from the theater. A group of boys was hanging around that parking lot. Feeling unsafe, Mrs. Erichsen proceeded out of the lot in search of another place to park.
Mrs. Erichsen headed toward Cleveland Avenue and entered an empty parking lot off of Fifth Street. She and Christina noticed the same group of boys loitering in the lot as well as a black man wearing a dark baseball-style jacket, dark jeans, and a dark baseball cap. Still feeling uneasy, Mrs. Erichsen started to drive away, but changed her mind when she noticed another woman parking her vehicle in a different area of the same lot. Mrs. Erichsen parked her car next to the woman's vehicle.
Prior to exiting the vehicle, Mrs. Erichsen and Christina saw the black man, whom they believed was the parking lot attendant, approaching them. The two exited the car and proceeded toward the theater. As they walked across the parking lot, the man approached them. Within seconds, he was standing face to face in front of Mrs. Erichsen and Christina at a distance of approximately one foot. The man said something indiscernible to Mrs. Erichsen. When she replied, "Excuse me", he demanded, "Give me your purse." Because she feared the man was armed, Mrs. Erichsen heeded his command and gave him her purse and a camera bag which contained a camcorder, a camera, videotapes, and batteries. Thereafter, the man walked away in a southwest direction. During the confrontation, Christina noticed the man was holding a knife at waist level. The confrontation lasted approximately five to ten seconds.
Mrs. Erichsen and Christina headed toward the theater, but turned around and observed the man walking backwards, watching them. The man turned around and briskly walked away. Upon entering the theater, Christina screamed, "We've been robbed." Someone called "911". Christina gave the dispatcher a description of the man. Approximately five minutes later, Officers Marino and Anderson of the Canton Police Department arrived at the scene. The Erichsens described the robber as a medium build black male with short hair, approximately twenty-seven years old, 6' to 6'1" in height, and approximately 200 pounds. The victims noted the man was wearing a dark coat, dark baseball cap, and dark jean-type pants. Officer Marino transmitted the description of the suspect over the radio.
When Officers Ramser and Nordick arrived at the scene, they listened to the victims' description of the suspect and began their pursuit. Upon approaching Fifth Street and DeWalt Avenue, the officers observed a black man, who was wearing dark pants and holding a dark coat, looking into the trunk of a car. When he saw the police cruiser, the man ran in an eastbound direction. After a brief foot chase, Officer Nordick found the man crouched in an area where large storage drums are housed. Officer Ramser drew his gun and ordered the man to stand up and raise his hands. When the suspect attempted to escape, the officers sprayed him with pepper spray. However, the man was able to escape from the area.
The officers recommenced their pursuit. Officers Anderson and Marino observed Officers Nordick and Ramser pursuing the suspect across the lawn of St. John's Church. Marino exited the cruiser and eventually caught the man. The officers placed the man in the cruiser and transported him back to the Palace Theater. The suspect was ultimately identified as appellant.
Upon returning to the Palace Theater, the officers showed the Erichsens a black coat which they had recovered. Both victims told the officers the coat looked like the one worn by the assailant. The officers asked Mrs. Erichsen to identify appellant, who was seated in the back of the cruiser. Mrs. Erichsen advised the officers she could not positively identify appellant as the robber because he looked as if he was blind and moved about the cruiser in a peculiar manner. Thereafter, the officers asked Christina to identify appellant. Although she noted appellant's eyes were red and teary as a result of his being maced, Christina positively identified appellant as the assailant.
The next day, Detective Gregory Boudreaux visited the Erichsens in order to have the victims identify items recovered by the police from the area in which they chased appellant. The Erichsens identified a handbag, a camera bag, and a wallet as their belongings. They also told Detective Boudreaux the black baseball cap he showed them was similar to the hat worn by appellant. Prior to leaving the Erichsen's residence, the detective showed Mr. Erichsen a picture of the man the police had in custody. The man in the photograph was appellant. When Mrs. Erichsen viewed the photograph, she knew instantly appellant was the man who had robbed her. Christina also viewed the photograph and identified appellant pictured as the assailant.
On December 24, 1997, the Stark County Grand Jury indicted appellant on one count of aggravated robbery, in violation of R.C.2911.01. At his arraignment on January 2, 1998, appellant entered a plea of not guilty to the indictment. Appellant filed a Motion to Suppress requesting the trial court suppress the victims' out-of-court and in-court identifications of appellant because the pre-trial identification procedure was so impermissibly suggestive as to violate appellant's constitutional rights. The trial court conducted a hearing on appellant's motion on February 17, 1998.
At the suppression hearing, Detective Boudreaux testified he was assigned to investigate the robbery. As part of the investigation, the detective explained he prepared a photo array composed of six photographs, including one of appellant. Boudreaux stated he visited the Erichsen's residence on December 19, 1997, and showed the array to Mrs. Erichsen and Christina separately. He testified both victims picked appellant as the assailant.
Mrs. Erichsen and Christina testified, Detective Boudreaux only showed them one photograph and not a complete photo array. Mrs. Erichsen explained she was unable to identify appellant during the on-scene "show-up" because "he was acting like a blind man" and "because of that, I did not want to put someone in jail that I wasn't positive had done this." Suppression Hearing at 69. Christina stated she knew immediately appellant was the man who had robbed her mother.
Via Judgment Entry dated March 4, 1998, the trial court denied appellant's motion to suppress the on-scene identification of both victims finding a sufficient indicia of reliability, but granted the motion with respect to the victims' identification of appellant through the photograph the following day. The trial court denied appellant's request to suppress Mrs. Erichsen's in-court identification.
The matter proceeded to a trial by jury on March 2, 1998. At trial, appellant called Detective Boudreaux to testify in his defense. The trial court allowed appellant to treat the detective as a hostile witness and permitted appellant to examine the detective as if on cross-examination. Detective Boudreaux's trial testimony differed from his suppression hearing testimony regarding the photographic line-up. The detective testified he did not prepare a photographic array or present the Erichsens with a photo line-up, but rather showed the victims only one photograph. Detective Boudreaux stated the discrepancy between his testimony at the suppression hearing and his trial testimony was a mistake. He explained he had confused the instant matter with a case he was preparing for the grand jury on the same day as the suppression hearing.
After hearing all the evidence and deliberations, the jury found appellant guilty of aggravated robbery. The trial court sentenced appellant to a term of incarceration of nine years. The trial court memorialized the jury's verdict and sentence in a Judgment Entry dated March 11, 1998.
It is from this conviction and sentenced appellant prosecutes this appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE REGARDING EYEWITNESS IDENTIFICATION WHERE THE IDENTIFICATION PROCEDURE WAS IMPERMISSIBLY SUGGESTIVE AND UNRELIABLE.
 II. THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS FILED BY APPELLANT.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND HIS CONSTITUTIONAL DUE PROCESS RIGHTS WHEN IT DENIED APPELLANT'S MOTION FOR MISTRIAL ON THE BASIS OF THE STATE'S FAILURE TO PRODUCE THE WITNESS' WRITTEN STATEMENT.
 IV. THE JURY VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant contends the trial court erred in admitting the identification testimony of the victims because of the constitutionally defective identification procedures. First, appellant maintains both the on-scene show-up of appellant and the single photograph "array" were impermissively suggestive. Additionally, appellant asserts the in-court identification of appellant lacked an independent basis to insure reliability.
"It is the likelihood of misidentification which violates a defendant's right to due process" State v. Parker (1990), 53 Ohio St.3d 82,87. "Suggestive confrontations are disproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for further reason that the increased chance of misidentification is gratuitous."Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375,34 L.Ed.2d 401. The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations "would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process." Id. at 199. (Citations omitted). "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." Manson v. Brathwaite (1977),432 U.S. 98, 106, 97 S. Ct. 2243, 2249, 53 L.Ed.2d 140. "[R]eliability is the linchpin in determining the admissibility" of such evidence. Id. at 114.
In State v. Brown (1988), 38 Ohio St.3d 305, the Ohio Supreme held:
 Where a witness has been confronted by a suspect before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances.
 Id. at 310, citing Manson v. Brathwaite, supra.
The central question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. Neil v. Biggers, supra at 199.
The factors to be considered in evaluating the likelihood of misidentification include the following:
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 Id. at 199-200.
Applying these factors to Christina's identification of appellant at the on-scene show-up, we conclude the identification was reliable. First, Christina had ample opportunity to view appellant during the commission of the offense. Christina stood approximately one foot away from appellant and looked at his face. She testified this face-to-face confrontation lasted approximately five to ten seconds. Additionally, Christina and her mother observed appellant twice before the commission of the offense. They also caught another look at appellant as he left the scene.
Second, Christina's attention was focused on appellant. As Mrs. Erichsen and Christina walked toward the theater, appellant approached them and muttered something indiscernible, to which Mrs. Erichsen responded, "Excuse me." Appellant moved in closer and demanded, "Give me your purse."
Prior to the one-on-one showup, the victims gave police separate, identical descriptions of the assailant. Mrs. Erichsen and Christina both described the robber as a black male, in his late twenties, 6' to 6' 1" in height, medium build, and wearing a dark coat, dark jean style pants, and a dark baseball hat. Appellant matches this description.
Next, Christina demonstrated a high level of certainty during the on-scene show-up. Immediately upon seeing appellant, Christina positively identified him as the assailant. Finally, the length of time between the crime and the identification was minimal. The identification occurred approximately fifteen to twenty minutes after the offense.
Under the totality of the circumstances, we find Christina's identification was reliable, and the trial court did not err in admitting her out-of-court identification. We find any argument relative to Mrs. Erichsen's out-of-court identification is moot because the victim was unable to identify the suspect at the scene.
We now turn our attention to appellant's argument as it relates to the victims' in-court identification. Appellant maintains the in-court identifications lacked an independent basis to insure reliability.
Although a pretrial identification procedure is found to be unnecessarily suggestive, an in-court identification may be admissible if the State establishes by clear and convincing evidence "the in-court identification was based upon an observation of an independent origin other than the pre-trial confrontation." State v. Lathan (1972), 30 Ohio St.2d 92, 96. In determining the admissibility of in-court identification testimony, the court must weigh the same factors considered when determining the reliability of a pre-trial identification. Statev. Moody (1978), 55 Ohio St.2d 64, 67.
Prior to the commencement of trial, the trial court conducted a voir dire of Mrs. Erichsen to determine whether her in-court identification would be based upon an observation independent from the pre-trial confrontations.
During the voir dire, Mrs. Erichsen immediately identified appellant as the man who robbed her. She testified she stood face-to-face with appellant at a distance of approximately one foot during the commission of the offense. She stated the encounter lasted approximately thirty seconds, during which time she focused her attention on appellant's face. Mrs. Erichsen noted, although Detective Boudreaux had asked her husband if he wanted to see a picture of the man the police had in custody, she did not know if she would recognize the assailant from a picture. However, when she viewed the picture, Mrs. Erichsen had no doubts the man in the photograph (appellant) was the assailant. After concluding the voir dire, the trial court found Mrs. Erichsen had an independent recollection of appellant, under the totality of the circumstances, her in-court identification was not so tainted by any suggestive procedures which previously occurred as to render such identification inadmissible.
Applying the five Biggers factors, we find Mrs. Erichsen's in-court identification was based upon an observation of an independent origin. Mrs. Erichsen had the opportunity to view appellant four different times on the night of the offense. During the commission of the offense, appellant and Mrs. Erichsen exchanged words in a face-to-face manner. Second, throughout the confrontation, Mrs. Erichsen focused her attention on appellant's face. Next, the description Mrs. Erichsen gave police when the arrived at the theater matched appellant. Additionally, Mrs. Erichsen showed a high level of certainty when she identified appellant during the voir dire. Finally, only about two and half months lapsed between the commission of the offense on December 18, 1997, and the commencement of the trial on March 3, 1998.
Because Mrs. Erichsen's in-court identification had its origin in observation independent from her pre-trial confrontations, we find the trial court did not err in admitting her in-court identification. For the same reasons we find the factors weigh in favor of the admission of Mrs. Erichsen's in-court identification, we also find those factors weigh in favor of the admission of Christina's in-court identification. We further find the trial court did not err in admitting Christina's in-court identification.
Based upon the foregoing reasons, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant asserts the trial court erred in overruling his motion to suppress. For the reasons set forth in appellant's first assignment of error, we overrule appellant's second assignment of error.
 III
In his third assignment of error, appellant maintains the trial court erred in denying his motion for a mistrial. Appellant submits a mistrial was warranted because he was not given an opportunity to view the written statement Christina gave to the police as required by Crim. R. 16(G). Appellant explains the statement contained a description of the assailant and a review of the statement was crucial for use during his cross-examination of Christina.
In Arizona v. Youngblood (1988), 488 U.S. 51,102 L.Ed.2d 281, 109 S.Ct. 333, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. The United States Supreme Court stated:
 The Due Process Clause of the Fourteenth Amendment, as interpreted in [Maryland v. Brady (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.
 Id. at 57-58.
Pursuant to Youngblood, supra, the State violates a criminal defendant' due process rights when it suppresses or fails to preserve material exculpatory evidence. However, the State's failure to preserve potentially useful evidence violates a defendant's due process rights only when the police or prosecution act in bad faith. State v. Lewis (1990), 70 Ohio App.3d 624, 634. Accordingly, this Court must determine whether the lost evidence was materially exculpatory and, if not, whether the State acted in bad faith.
The burden of proof is on the defendant to show the exculpatory nature of the evidence. California v. Trombetta
(1984), 467 U.S. 479, 489-490, 104 S.Ct. 2528, 81 L.Ed.2d 413. InTrombetta, supra, the United States Supreme Court articulated a test to determine the materiality of evidence:
 To meet this standard of constitutional materiality, * * * evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. * * *
 Id. at 488-489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422
(Citations omitted).
In State v. Johnston (1988), 39 Ohio St.3d 48, the Ohio Supreme Court articulated its own standard for determining whether evidence is materially exculpatory or potentially useful:
 * * * evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. * * *
 Id. at par. 5 of syllabus.
In the instant action, appellant has failed to demonstrate the lost evidence was materially exculpatory. Furthermore, appellant has failed to demonstrate the information contained in Christina's written statement was inconsistent with her trial testimony. Because the record is void of any evidence demonstrating the result of the trial would have been different if the statement had been disclosed to appellant, we conclude the evidence at issue is, at most, potentially useful.
Although appellant has failed to establish the lost evidence was materially exculpatory, he can still establish his due process rights were violated by showing bad faith on the part of the police or the State in losing the evidence.
The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272,276 (Citation omitted). In order to determine bad faith, we do not look to the content of the written statement, but rather to the State's handling of the evidence.
After the State's direct examination of Christina, appellant's trial counsel requested the opportunity to review the written statement. The State explained, although it received the full police file, it was not in possession of the written statement. The trial court instructed the bailiff to contact the Canton Police Department in an effort to locate the statement, however, these efforts were futile. The State explained Officer Lombardi, the on-scene officer, stated he took a written description of the suspect from Christina. When he returned to the station, he placed the statement into the appropriate filing bin.
Upon review of the entire record in this matter, we find no evidence the State deliberately lost, concealed, or destroyed the evidence. Because appellant has failed to establish the State acted in bad faith, we find the trial court did not err in overruling his motion for a mistrial.
Appellant's third assignment of error is overruled.
 IV
In his final assignment of error, appellant argues the jury's verdict was against the manifest weight of the evidence. Specifically, appellant claims the evidence presented at trial was insufficient to support a conviction of aggravated robbery because a knife was not found on his person or in the vicinity of where he was arrested, and because the victim, Mrs. Erichsen, did not observe a knife during the ordeal.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
The indictment in the instant action charged appellant with aggravated robbery, in violation R.C. 2911.01(A)(1), which provides:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt of offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it;
Although Mrs. Erichsen did not observe appellant with a knife during the encounter, Christina testified she saw appellant holding a knife by his side. The trier of fact of free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. Christina's testimony alone provided the jury with sufficient evidence from which it could find appellant possessed a knife during the commission of the offense.
Furthermore, the fact a knife was never recovered is not dispositive of the issue of whether appellant had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, or indicated he possessed it, or used it. The State is not required to produce the deadly weapon in order to obtain a conviction for aggravated robbery. See, Statev. Vondenburg (1980), 61 Ohio St.2d 285; State v. Price (1989),52 Ohio App.3d 49.
Upon our review of the entire record, we find the jury did not clearly lose its way so as to result in a manifest miscarriage of justice. We do not disagree with the jury's resolution of the testimony.
Appellant's fourth assignment of error is overruled.
The conviction and sentence of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J., Wise, P.J. and Farmer, J. concur.
______________________________
______________________________
 ______________________________ JUDGES
WBH/KM208
JUDGMENT ENTRY
CASE NO. 1998CA0083
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
_________________________________
_________________________________
 _________________________________ JUDGES