OPINION
{¶ 1} Defendant-appellant, Guy Marbury (hereinafter "appellant"), appeals from the judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery with specification in violation of R.C. 2911.01 (hereinafter "count one"), two counts of robbery with specification in violation of R.C. 2911.02 (hereinafter "counts two and three"), abduction with specification in violation of R.C. 2905.02
(hereinafter "count five"), and having a weapon while under disability in violation of R.C. 2923.13 (hereinafter "count five"). For the following reasons, we affirm in part and reverse in part the decision of the trial court.
 {¶ 2} Shortly after midnight on April 3, 2002, appellant entered the Marathon station (hereinafter "store") located at the corner of West 5th Avenue and Olentangy River Road, Columbus, Franklin County, Ohio. Davis Lee Walkup (hereinafter "Walkup") was the only person working at the store when appellant entered. Appellant asked if they sold garbage bags. Walkup informed him they did and directed appellant to the appropriate aisle.
 {¶ 3} Appellant proceeded to the aisle and picked up a box of garbage bags. He also selected some donuts from the self-serve donut counter. Appellant placed the garbage bags and donut bag on the counter.
 {¶ 4} Subsequently, appellant ripped open the box and pulled a garbage bag out and proceeded to walk around the corner of the counter. Appellant was informed he was not permitted behind the counter, at which time, appellant opened his coat with his hand and said, "I'm going to show you what I'm going to do with these garage [sic] bags * * * I want you to stand perfectly still." (Tr. at 24.) When appellant opened his coat, Walkup observed the handle of a gun tucked down appellant's pants. Appellant did not pull out the gun.
 {¶ 5} In response, Walkup placed his hands on the counter. Appellant proceeded to fill the garbage bag with approximately 30 to 40 cartons of cigarettes located behind the counter. He then left the store in a blue Chevy S-10 truck with two other men. The rear of the truck was backed in against the store and did not have a rear license plate.
 {¶ 6} Walkup called the police, who arrived in ten to 15 minutes. He provided the following description to police: black male with a goatee, 35 to 40 years of age, 130 to 150 pounds, wearing a black stocking cap and black running suit. At trial, Walkup provided the following description: black male with a "fu manchu" mustache, approximately 40 years old, weighing approximately 180 to 190 pounds, wearing a t-shirt under a black plastic material sweat suit and a bandana around his head. He never saw appellant in the store prior to that evening.
 {¶ 7} The box of garbage bags and the donut bag were collected by the Columbus Police Department (hereinafter "CPD"). Ronald Waugh of the Crime Scene Search Unit obtained one latent fingerprint lift (hereinafter "lift") of value from the box of garbage bags. Fingerprint analysis of the lift revealed a match to appellant's right index finger.
 {¶ 8} As a result, CPD Detective Ron Strollo prepared a photographic array (hereinafter "array") of six black males with similar physical characteristics. On May 2, 2002, Detective Strollo met Walkup at the store and showed him the array. He picked photograph two, appellant's photograph, from the array and indicated on the Investigative Photo Array Procedure form (hereinafter "array form") his level of certainty was 80%.
 {¶ 9} On May 9, 2002, the Franklin County Grand Jury indicted appellant.[1] Appellant was arrested approximately one month later.
 {¶ 10} On January 23, 2003, a jury trial resulted in a verdict finding defendant guilty of counts one, two, three, and four. As appellant waived his right to jury as to count five, the trial court found appellant guilty of this charge.
 {¶ 11} By judgment entry filed January 28, 2003, the trial court merged counts two, three, and four into count one. The trial court sentenced defendant to nine years for count one, three years for the specification in count one, and 12 months for count five.
 {¶ 12} Appellant timely appeals and asserts the following assignments of error:
[1.] The trial court erred when it entered a judgment of conviction against the appellant when the evidence was insufficient to sustain the conviction and was not supported by the manifest weight of the evidence.
[2.] The trial judge failed to discharge his duty by mis-instructing the jury as to alternative ways of committing offenses not contained in the indictment and by failing to instruct as to a specification contained in the indictment.
[3.] The defendant-appellant was denied the effective assistance of counsel as guaranteed under the fifth, sixth and fourteenth amendments to the united states constitution and Article I, Section 10 of the Ohio Constitution.
[4.] The trial court erred when it sentenced appellant to a maximum sentence on one count and imposed consecutive sentences without consideration of the statutory factors.
 {¶ 13} Appellant's first assignment of error asserts the trial court erred in entering a judgment of conviction when the evidence was insufficient to sustain the conviction and was not supported by the manifest weight of the evidence.
 {¶ 14} In determining whether a record contains sufficient evidence to sustain the conviction, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. "[T]he weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 15} While an appellate court may conclude a judgment of a trial court is sustained by sufficient evidence, it may, nonetheless, conclude the judgment is against the weight of the evidence. State v. Robinson
(1955), 162 Ohio St. 486. Weight of the evidence involves:
[T]he inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Black's Law Dictionary (6 Ed. 1990) 1594; (emphasis sic).
 {¶ 16} As such, the issue is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Nields (2001),93 Ohio St.3d 6, 25, (emphasis omitted).
 {¶ 17} Appellant first argues there was insufficient evidence to convict appellant of using a deadly weapon, and, thus, insufficient evidence to convict him of aggravated robbery. Alternatively, appellant asserts his conviction for aggravated robbery is against the manifest weight of the evidence.
 {¶ 18} The offense of aggravated robbery is defined in R.C. 2911.01, in pertinent part, as follows:
(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]
 {¶ 19} Moreover, "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11.
 {¶ 20} To sustain a conviction for aggravated robbery, it is not necessary for appellee, the State of Ohio (hereinafter "appellee"), to prove the gun was capable of firing a projectile when the gun is not available for testing. Instead, "[a] jury is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use." State v. Vondenberg (1980), 61 Ohio St.2d 285, 289.
 {¶ 21} In the instant action, the facts and circumstances support the inference of the deadly nature of the instrument utilized by appellant. When Walkup informed appellant he was not allowed around the counter, Walkup testified appellant opened up his coat and revealed a gun, "He had — the only thing I seen was a handle of a gun. He didn't pull it out but it was tucked down his pants." (Tr. at 24-25.) Moreover, when questioned regarding his familiarity with firearms and specifically handguns, Walkup testified as follows:
A. Well, I spent time in the Marine Corp. which I learned handguns there, plus I worked at a gun shop for a couple years. So I basically know my handguns.
Q. [Prosecutor] Could you tell whether this handgun was the butt of a semi-automatic or revolver?
A. Revolver.
Q. That you know for sure?
A. Yes, sir.
(Tr. at 46-47.)
 {¶ 22} Accordingly, the record contains sufficient evidence to support appellant's conviction for aggravated robbery. Furthermore, the aforementioned testimony represents substantial evidence in support of appellant's conviction for aggravated robbery. Thus, the jury did not lose its way and appellant's conviction is not against the manifest weight of the evidence.
 {¶ 23} Next, appellant argues there is insufficient evidence to support his conviction for robbery. As stated above, appellant maintains there is insufficient evidence to establish he possessed a deadly weapon. Second, appellant contends there is no evidence he inflicted or attempted to inflict physical harm on anyone. Third, as to the alternative of "threaten to inflict physical harm," the only witness to the incident testified he was not threatened in any way. Finally, appellant asserts his conviction for robbery is against the manifest weight of the evidence.
 {¶ 24} Robbery, pursuant to R.C. 2911.02, is defined, in relevant part, as follows:
(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control;
* * *
(3) Use or threaten the immediate use of force against another.[2]
 {¶ 25} As discussed above, there is sufficient evidence to support the finding appellant had a deadly weapon on or about his person and this determination is not against the manifest weight of the evidence. As such, we turn to whether there was sufficient evidence to support appellant's conviction for robbery, pursuant to R.C. 2911.02(A)(3).
 {¶ 26} This element "is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." State v. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus. As such, the evaluation of the nature of the threat is an objective standard. Id. at 94.
 {¶ 27} As previously stated, appellant walked behind the counter, showed Walkup his gun and told him to remain still. At trial, Walkup testified as to his response to appellant's actions. "I just pulled put [sic] my hands up on the counter. I was perfectly still." (Tr. at 24). When questioned further regarding his behavior, he responded, "Because I was scared. I was scared. He was going to rob me so I didn't want to, you know, make him mad or anything like that. So he could take whatever he want as long as nobody else got hurt." (Tr. at 25). Moreover, while Walkup testified he was never threatened in any way by appellant (Tr. at 43), upon further questioning, he clarified this answer:
Q. [Prosecutor] Finally, Mr. Cicero asked you if he had threatened you. When he opened up the coat and showed you the firearm, did you take that to be a threat?
A. Yes, I did.
Q. Did he actually verbally threaten you, say anything to you?
A. No.
Q. You earlier testified that you were in fear, that's why you —
A. Yes, sir.
Q. — complied with what he said?
A. Yes, I did.
Q. Essentially freeze, don't move?
A. That's what I did.
Q. Did you take that to be — his showing you the weapon — an indication that he was ready to use it?
A. Well, yes, um-hmm.
(Tr. at 46.)
 {¶ 28} Accordingly, the evaluation of appellant's actions by an objective standard reveals the fear caused was of such a nature as in reason and common experience to induce a person to part with property against his will and temporarily suspend his power to exercise his will. Walkup did nothing to prevent appellant from taking the cartons of cigarettes. Moreover, he complied with appellant's demands by placing his hands on the counter and not moving. Therefore, sufficient evidence existed to support appellant's conviction for robbery based upon R.C.2911.02(A)(3).
 {¶ 29} Additionally, the referenced evidence represents substantial evidence upon which the jury could reasonably conclude the element of "use or threaten the immediate use of force" was proved beyond a reasonable doubt. As such, appellant's conviction for robbery is not against the manifest weight of the evidence.
 {¶ 30} Finally, appellant contends his convictions on the firearm specifications were not based on sufficient evidence and were against the manifest weight of the evidence. Appellant argues the proof necessary to prove an item is a deadly weapon, pursuant to R.C. 2901.11, differs from what is necessary to prove a firearm specification, pursuant to R.C.2941.145 and 2941.141. Specifically, appellant maintains there must be some evidence of the firearm's operability in order to establish the firearm specification. Appellant asserts this evidence is lacking as there is no evidence of gunshots, gunpowder or bullet holes. Moreover, the item alleged to be the firearm was not fully displayed and was not pointed at anything or anyone. Finally, there was no evidence of threats, explicit or implicit. To the contrary, Walkup specifically denied the appellant threatened him.
 {¶ 31} With the exception of count five, there were two firearm specifications alleged on all counts. The first specification, pursuant to R.C. 2941.141, requires, in relevant part, "[i]mposition of a one-year mandatory prison term upon an offender * * * is precluded unless the indictment * * * specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense" (hereinafter "one-year specification"). The second specification, pursuant to R.C. 2941.145, states, in pertinent part:
Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of * * * is precluded unless the indictment * * * specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.[3]
(Hereinafter "three-year specification".)
 {¶ 32} To convict a defendant of a firearm specification, evidence beyond a reasonable doubt must be presented "that the firearm was operable, or could readily have been rendered operable, at the time of the offense." State v. Murphy (1990), 49 Ohio St.3d 206, 208-209. This proof does not require the production of the firearm or empirical analysis of the firearm. Id. at 209. Instead, it can be established by lay witnesses who were able to observe the instrument and the circumstances surrounding the crime, id., paragraph one of the syllabus, modifying State v. Gaines
(1989), 46 Ohio St.3d 65. including an implicit threat by the individual controlling the firearm. Thompkins, supra, paragraph one of the syllabus. To hold otherwise emasculates the legislative intent of the statute. Murphy, supra, at 209; Thompkins, supra, at 385.
 {¶ 33} The circumstances in Thompkins provide guidance as to the proof necessary to establish a firearm was operable or could have been rendered operable. Booker Thompkins entered a bakery and asked the clerk for an employment application. After reaching for an application form, the clerk turned back to Thompkins and noticed he was pointing a gun directly at her. He then told the clerk he was committing a "holdup" and to be "quick, quick." The clerk removed the money from the cash register, placed it in a bag and handed it to Thompkins. He took the money, told the clerk not to call the police for ten minutes and left the bakery.
 {¶ 34} In discussing the implicit threat to the clerk, the Thompkins
court opined it did not lessen the fact the clerk's life was in danger. Id. at 383. Moreover,
[e]ven absent any explicit verbal threats on the part of Thompkins, the trier or fact in this case could have reasonably concluded, based on the totality of the circumstances, that Thompkins was in possession of a firearm at the time of the offense, that is, a deadly weapon capable of expelling projectiles by an explosive or combustible propellant.
Id.
 {¶ 35} In the instant action, when Walkup told appellant he was not allowed behind the counter, appellant revealed the gun tucked into his pants. At the same time, he told Walkup to stand perfectly still. Finally, Walkup, with experience in firearms, identified the gun as a revolver. Accordingly, based upon the analysis in Thompkins and the similarity between the circumstances, we conclude sufficient evidence exists to support appellant's convictions for the firearm specifications.
 {¶ 36} Furthermore, this represents substantial evidence in support of appellant's convictions for the one-year and three-year specifications. As such, the jury did not lose its way and appellant's conviction is not against the manifest weight of the evidence.
 {¶ 37} For the same reasons set forth above with respect to the firearm specifications, there is both sufficient and substantial evidence which supports appellant's conviction for having a weapon while under disability.
 {¶ 38} Accordingly, appellant's first assignment of error is overruled.
 {¶ 39} In his second assignment of error, appellant submits the trial court erred by incorrectly instructing the jury with regard to the charge of aggravated robbery and all of the gun specifications.[4] Appellant contends the trial court instructed the jury as to aggravated robbery and the three year specification on an alternative contained in the statute, but was not alleged in appellant's indictment. This error may have resulted in the jury returning guilty verdicts based on one of the alternative ways of committing the offense for which appellant was not indicted.
 {¶ 40} With respect to aggravated robbery, the indictment states:
[appellant] * * * in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense did have a deadly weapon, to wit: a gun, on or about his person or under his control, and did display the weapon, and/or did indicate that he did possess the weapon[.]
However, the jury was instructed as follows:
Before you can find the [appellant] guilty of aggravated robbery you must find beyond a reasonable doubt that on or about the 3rd day of April in the year 2002, in Franklin County, Ohio, the [appellant], in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, did have a deadly weapon on or about his person or under his control, and that the [appellant] displayed a weapon and/orbrandished a weapon and/or indicated that he possessed a weapon and/orused a weapon.
(Tr. at 197; emphasis added.)
 {¶ 41} Similarly, with regard to the three-year specification, the indictment states:
[Appellant] had a firearm on or about his person or under his control while committing the said [a]ggravated [r]obbery, and the said [appellant] displayed and/or brandished and/or indicated that he possessed the firearm[.]
However, the trial court instructed the jury as follows:
You must decide whether the state has proved beyond a reasonable doubt that the [appellant] had a firearm on or about his person or under his control while committing the offense, and did display and/or brandish and/or indicate that he possessed a firearm and/or used a firearm tofacilitate the offense.
(Tr. at 200; emphasis added.)
 {¶ 42} Finally, appellant contends the trial court failed to instruct the jury as to the one-year specification with respect to counts one through four. While the verdict forms contain the elements of the one-year specification separate from the additional elements necessary to prove the three-year specification, the jury did not receive specific instructions as to the one-year specification. Moreover, appellant was not found to have committed the separate one-year specification. Appellant asserts, under the circumstances in this matter, if properly instructed, the jury could have found appellant guilty of the one-year specification rather than the three-year specification.
 {¶ 43} As conceded by appellant, appellant's trial counsel did not raise any of these alleged improprieties with the jury instructions at the time of the alleged errors. This failure to object bars appellant from assigning as error the giving, or the failure to give, any instruction. Crim. R. 30.
 {¶ 44} Nevertheless, we are able to consider the appropriateness of the jury instruction pursuant to the "plain error" standard. Crim.R. 52(B). To constitute plain error:
The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'
State v. Tichon (1995), 102 Ohio App.3d 758, 767, citing State v.Craft (1977), 52 Ohio App.2d 1, 17, quoting United States v. Atkinson
(1936), 297 U.S. 157, 160, 56 S.Ct. 391.
 {¶ 45} A trial court's failure to separately and specifically instruct a jury as to every essential element of a crime which an accused is charged with does not per se constitute plain error. State v. Adams
(1980), 62 Ohio St.2d 151, paragraph two of the syllabus. When an accused asserts plain error, pursuant to Crim.R. 52(B), as a result of a trial court's failure to separately and specifically instruct a jury as to every essential element of a crime the accused is charged with, the reviewing court must determine, from a review of the record, whether that failure may have resulted in a manifest miscarriage of justice. Id., paragraph three of the syllabus, citing State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus, approved and followed.
 {¶ 46} In this matter, the issue is not whether the trial court failed to instruct the jury as to every essential element of the crimes with which appellant was charged. Instead, the alleged error involves the fact the jury received instructions as to elements of offenses with which appellant was not indicted. Upon review, we conclude this was error, but not plain error.
 {¶ 47} The facts establish appellant opened his coat and revealed the handle of a gun tucked into his pants. Upon these facts, with respect to the aggravated robbery charge, a reasonable jury would not have found appellant not guilty of displaying the gun, and/or indicating he possessed the gun, but guilty of brandishing the gun and/or using the gun. Similarly, as to the three-year specification, no reasonable jury would have found appellant not guilty of displaying and/or brandishing and/or indicating that he possessed the firearm, but guilty of using a firearm to facilitate the offense. Thus, appellant fails to demonstrate the result of the trial would have been different had the additional element not been included in the jury instructions. Moreover, reviewing the record reveals the inclusion of the additional elements did not result in a manifest miscarriage of justice.
 {¶ 48} The same result is reached with respect to the trial court's failure to instruct the jury on the one-year specification. While it is true the trial court failed to instruct as to the one-year specification, the verdict forms clearly required the jury make specific and separate factual findings as to the one-year and three-year specifications. Moreover, contrary to appellant's argument, on the verdict forms, the jury made the factual finding appellant "did have a firearm on or about his person or under his control while committing the offense" of abduction, robbery and aggravated robbery. Thus, the jury concluded appellant engaged in behavior which satisfied both the one-year and three-year specifications. As such, he fails to demonstrate the result of the trial would have been different had the jury received the instruction as to the one-year specification.
 {¶ 49} Accordingly, appellant's second assignment of error is overruled.
 {¶ 50} Appellant next argues he was denied effective assistance of counsel. Appellant contends trial counsel made a crucial error which prevented him from receiving a fair trial with respect to count five. Appellant maintains that while waiving his right to a jury trial as to this offense was initially wise, counsel's performance was unreasonable as to the further handling of the relevant evidence. First, trial counsel failed to make a motion for judgment of acquittal (hereinafter "acquittal motion"), pursuant to Crim.R. 29, at anytime during trial. When appellee closed its case, there was no evidence regarding appellant's alleged disability. Nevertheless, trial counsel not only did not make the acquittal motion, he proceeded to have appellant testify on his own behalf. It was upon cross-examination by the state that evidence of his prior conviction was admitted. Second, trial counsel was deficient in withdrawing pretrial motions to dismiss and to suppress evidence as a preliminary matter before trial. While no hearing was held on the motions, making it difficult to speculate as to the result, appellant contends a review of the evidence pertaining to the photo array reveals issues affecting its admissibility. Third, trial counsel was ineffective in failing to object to the content of the jury instructions. Notwithstanding trial counsel's obligation to raise the improprieties, as discussed above, he failed to object to multiple errors in the instructions. Finally, appellant alleges trial counsel failed to inquire whether the state proved who was the alleged victim. The indictment indicates the victim was Lawson Oil Company (hereinafter "Lawson"). However, nowhere in the trial did any witness identify the alleged victim as Lawson.
 {¶ 51} A properly licensed attorney in Ohio is presumed competent.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. As such, the appellant bears the burden of proving ineffectiveness. State v. Smith (1981),3 Ohio App.3d 115.
 {¶ 52} In scrutinizing counsel's performance, a court must be highly deferential. Strickland v. Washington (1984), 466 U.S. 668, 689. Furthermore, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id.
 {¶ 53} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. To demonstrate prejudice, appellant must establish there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id., paragraph three of the syllabus.
 {¶ 54} As asserted by appellee, appellant waived his right to a jury trial on count five. As such, when appellee rested its case-in-chief, it did so only with respect to the charges to be considered by the jury. Therefore, if trial counsel had argued an acquittal motion when appellee rested its case-in-chief, it would have been fruitless as, under the circumstances, appellee was not required to present evidence on the jury-waived charge at that point in time. Moreover, the decision to have appellant testify was sound trial strategy. First, appellant admitting to his prior criminal record helped bolster his credibility. Second, it provided him the opportunity to offer an explanation as to why his fingerprints were on the box of garbage bags. As such, appellant does not establish trial counsel's failure to argue an acquittal motion fell below an objective standard of reasonable representation.
 {¶ 55} Turning to the pretrial motions, we will focus on the identification of appellant as that is the issue on which appellant focuses his argument.
 {¶ 56} Unreliable identification testimony is excludable under the Due Process Clause of the United States Constitution. State v. Salwan (May 30, 1996), Cuyahoga App. No. 68713. In the context of eyewitness identification testimony, an impermissibly suggestive identification procedure will be suppressed due to the substantial likelihood of irreparable misidentification. Neil v. Biggers (1972), 409 U.S. 188,198, 93 S.Ct. 375. "It is the likelihood of misidentification which violates a defendant's right to due process." As such, the critical inquiry is "whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199. "[R]eliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite
(1977), 432 U.S. 98, 114, 97 S.Ct. 2243. The factors to consider in determining whether identification testimony is reliable include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation. Biggers, at 199-200. The corrupting effect of any suggestive identification procedure must then be weighed against these factors. Manson, at 114-116.
 {¶ 57} In the current matter, appellant does not assert the identification was the result of a suggestive confrontation procedure. Instead, the focus is solely on whether Walkup's identification was reliable. An application of the Biggers factors reveals the identification was sufficiently reliable and trial counsel was not ineffective for failing to challenge it.
 {¶ 58} First, he had an opportunity to view appellant at the time of the robbery. He engaged in a conversation with appellant upon entering the store. Moreover, after Walkup realized appellant was robbing the store, he was able to continue looking at him. Second, he had a high degree of attention. He was aware appellant had a gun and was robbing the store. Third, Walkup described appellant to CPD shortly after the incident. He included his race, approximate weight, age range, a description of his clothing and that he has a mustache. Appellant does not contend he does not possess the physical characteristics described by Walkup. See Manson, at 115. Fourth, upon identifying appellant, he rated his level of certainty at 80 percent. Finally, a short period of time elapsed between the robbery and Walkup's identification of appellant.
 {¶ 59} As such, we cannot conclude trial counsel's performance in failing to challenge Walkup's identification of appellant fell below an objective standard of representation. Moreover, even if it did, appellant failed to establish there exists a reasonable probability that, but for this error, the result of the trial would have been different.
 {¶ 60} As to appellant's assertion trial counsel was ineffective for failing to ensure the jury was instructed properly, we previously concluded appellant failed to establish the outcome of the trial would have been different had the jury received the proper instructions. Accordingly, we conclude appellant did not establish trial counsel's performance in failing to ensure the jury was properly instructed was ineffective.
 {¶ 61} Finally, appellant's final argument regarding trial counsel's failure to inquire that Lawson was the alleged victim, is similarly unsuccessful. While advancing the argument, appellant offers no proof as to why this deficiency falls below an objective standard of representation or how, but for this alleged error, the result of the trial would have been different.
 {¶ 62} Accordingly, appellant's third assignment of error is overruled.
 {¶ 63} Finally, appellant asserts the trial court erred when it sentenced him to a maximum sentence on one count and imposed consecutive sentences without consideration of the statutory factors. With respect to the maximum sentence, appellant contends the trial court sentenced him to nine years for count one, three years for the three-year firearm specification and one year on count five. All the sentences are to run consecutively for a total of thirteen years. Therefore, appellant maintains the total sentence equals the maximum sentence which could have been imposed on the highest level offense, count one, with the three-year specification. Nevertheless, appellant alleges the trial court did not set forth its reasons for imposing the maximum prison term, as required by R.C. 2929.19(B)(2)(e). Similarly, the trial court failed to state its reasons for imposing consecutive sentences, as required by R.C.2929.19(B)(2)(c). Finally, appellant argues he was not properly notified of his exposure to post-release control.
 {¶ 64} In response, the State maintains the trial court did not impose a maximum sentence on either count and, thus, was not required to make a finding pursuant to R.C. 2929.14(C). However, the State concedes the trial court failed to give reasons for imposing an aggregate sentence equaling the maximum sentence which could be imposed for the most serious offense as required by R.C. 2929.19(B)(2)(e). Additionally, the State admits the trial court failed to make the findings required by R.C.2929.14(E)(4) and 2929.19(B)(2)(c). Finally, the State contends the record does not support appellant's claim he was not notified of his exposure to post-release control.
 {¶ 65} The maximum sentence for count one was ten years and eighteen months as to count five. The trial court sentenced appellant to nine years and one year, respectively. These are not the maximum sentence for either offense. R.C. 2929.14(C) does not apply if appellant was not sentenced to the maximum prison term for an offense. Thus, the trial court did not have to adhere to the requirements of R.C. 2929.14(C).State v. Akanny, Franklin App. No. 01AP-1415, 2002-Ohio-4776, at ¶ 33.
 {¶ 66} Before turning to appellant's arguments pertaining to the trial court's failure to provide its reasons for imposing consecutive sentences and an aggregate sentence equaling the maximum sentence which could be imposed for the most serious offense, we must examine the effect of the judgment entry being silent as to whether appellant's sentences are to run concurrently or consecutively. R.C. 2929.41, pertaining to multiple sentences, states in relevant part:
(A) Except as provided in division (B) of this section, division (E) of section 2929.14,[5] * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States. * * *
(B)(1) A jail term or sentence of imprisonment for a misdemeanor shall be served consecutively to any other prison term, jail term, or sentence of imprisonment when the trial court specifies that it is to be served consecutively * * *.
 {¶ 67} Moreover, "a defendant [is] entitled to have ambiguous language construed in his favor, if the court's oral pronouncement of the sentence differed from the journal entry." State v. Nye (June 4, 1996), Franklin App. No. 95APA11-1490, citing Gaddis v. United States (C.A. 6 1960),280 F.2d 334, 336; Hamilton v. Adkins (1983), 10 Ohio App.3d 217.
 {¶ 68} In this matter, the trial court indicated in the sentencing hearing and on the criminal disposition worksheet the sentences for counts one and five were to run consecutively. However, the trial court failed to state this in its judgment entry. Thus, pursuant to R.C. 2929.41, the sentences for counts one and five are presumed concurrent as a matter of law.[6] Accordingly, appellant's arguments with respect to the aggregate sentence and the consecutive sentence are moot.
 {¶ 69} Finally, pursuant to R.C. 2967.28(B) and (C), appellant must have been informed at sentencing that post-release control was part of his sentence. Woods v. Telb (2000), 89 Ohio St.3d 504, 513. In this matter, appellant executed a notice pertaining to post-release control which states, "I hereby certify that the Court read to me, and gave me in writing, the notice set forth herein." Clearly, through appellant's own admission, the trial court notified appellant that post-release control was part of his sentence. As such, the trial court satisfied the requirements of R.C. 2967.26(B) and (C).
 {¶ 70} Accordingly, appellant's fourth assignment of error is affirmed in part and reversed in part.
 {¶ 71} The evidence presented at trial was sufficient to support appellant's convictions and the convictions were not against the manifest weight of the evidence. Additionally, as the result of the trial would not have been different but for the alleged errors, the failure to properly instruct the jury in conformity with the indictment and all firearm specifications is not plain error. Furthermore, appellant failed to establish he was denied effective assistance of counsel. Finally, with respect to appellant's sentence, he was properly notified regarding post-release control. Finally, the trial court's failure to specify in its judgment entry that the nine year sentence for count one and the one year sentence for count five were to run consecutively requires they run concurrently.
 {¶ 72} Accordingly, appellant's first, second, and third assignments of error are hereby overruled. Appellant's fourth assignment of error is hereby overruled in part and affirmed in part. This matter is hereby remanded to the Franklin County Court of Common Pleas for re-sentencing consistent with the court's opinion.
Judgment affirmed in part, reversed in part and cause remanded with instructions.
Bowman and Petree, JJ., concur.
[1] Appellant was indicted on the same charges of which he was found guilty as set forth in paragraph one.
[2] Appellant argues, correctly, there is no evidence he inflicted or attempted to inflict physical harm on anybody. Moreover, appellee does not contend he did. While we agree with this assertion, we will not address this aspect of R.C. 2911.02 as, discussed below, the evidence supports the appellant's conviction pursuant to R.C. 2911.02(A)(1) and (3).
[3] As discussed in greater detail in assignment of error two, the indictment omitted the language "used it to facilitate the offense" with respect to the three-year specification.
[4] Appellant also asserts the trial court incorrectly instructed the jury with respect to the charge of robbery. However, appellant fails to address the specifics of this allegation. Instead, the only subsequent reference to the robbery charge is with respect to his argument regarding the one-year firearm specification instructions.
[5] 2929.14(E) requires mandatory sentences for firearm specifications are to be served consecutively to, inter alia, any prison term imposed for the underlying felony.
[6] We stress that this analysis does not impact the consecutive nature of the three-year firearm specification. The fact the trial court failed to state counts one and five were to be served consecutively in the judgment entry does not render the firearm specification sentence concurrent as firearm specifications are to be served consecutively as a matter of law.