THE STATE OF OHIO, APPELLANT, *v.*
VONDENBERG, APPELLEE.

[Cite as State v. Vondenberg (1980), 61 Ohio St. 2d 285.]

(No. 79-355—Decided March 12, 1980.)

*Mr. Thomas R. Spellerberg,* prosecuting attorney, and *Ms. Elaine J. Knutson,* for appellant.

*Mr. Michael P. Kelbley,* for appellee.

HOLMES, J. The specific issue presented in this cause concerns the type of proof necessary to be presented by the state to establish the presence of a "deadly weapon," an element of the crime of aggravated robbery pursuant to R. C. 2911.01.

The facts of the instant cause are that Mrs. Odessa Romig, owner of Romig's Best Mart, was, on April 21, 1978, working

in the rear of the store and "heard an awful noise up front." She testified that she had heard "a bang like a gun shot," and that she had observed someone in the vicinity of the cash register which was "right at the [front] door." Mrs. Romig identified the person at the cash register as the defendant, a man who had previously worked for her for approximately three or four months, and whom she saw periodically after that in the store.

Mrs. Romig testified that the defendant had a gun in his hand at the time of the incident. She described the gun as follows: "It was a short gun, but, it was black and it was thick through the part where the shells go. That is all I can tell you."

Further, relative to her familiarity with firearms, Mrs. Romig testified that she had handled and fired guns previously, more particularly, "a little .38 caliber that my husband's grandfather had and a .22."

Mrs. Romig also testified that she was familiar with the odor of gunpowder, and that when the defendant had left the store she proceeded to the front of the store where she smelled gunpowder. No bullet was found by the police.

Mrs. Romig testified that $634 had been stolen from the store.

The other witness who testified on behalf of the state was Mrs. Romig's 13 year-old granddaughter, Debi Romig, who was in the store at the time of this incident. Miss Romig testified that at 9:40 p.m. she was in the back of the store and heard a noise at the register. She then ran to the end of the first aisle to see what was going on, and saw a man, whom she was able to identify as the defendant, holding a black handgun, which was pointed right toward her.

The defendant testified that he was elsewhere that evening at the time of the alleged robbery. One Nadya Kasuga testified that the defendant was, at the time of the incident, at a bar which she manages.

No gun of any kind was found by the police, nor was there any evidence introduced by the state as to the type of gun that might have been used by the perpetrator of the crime. Conversely, the defendant, having offered the affirmative defense of alibi, presented no evidence negating the use of a gun in the instant robbery.

We must decide whether the testimony of the two witnesses that they had observed a gun in the defendant's hand is sufficient to sustain a conviction for aggravated robbery under the pertinent Ohio statutes.

Prior to 1974, R. C. 2901.13, the armed robbery statute, which was comparable to what is now the aggravated robbery statute, provided in pertinent part:

"No person, while armed with a pistol, knife, or other dangerous weapon, by force or violence, or by putting in fear, shall steal from the person of another anything of value." Construing this statute, Ohio courts held that an instrument need not be capable of firing a projectile to be a dangerous weapon. See *State* v. *Dye* (1968), 14 Ohio App. 2d 7.

Effective January 1, 1974, R. C 2911.01, aggravated robbery, was enacted, and, in pertinent part, provides as follows:

"(A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control."

R. C. 2923.11(A) defines a deadly weapon as follows:

"'Deadly weapon' means any instrument, device or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

The recent case of *State* v. *Meek* (1978), 53 Ohio St. 2d 35, discussed the meaning and intent of R. C. 2911.01, particularly as to what would now constitute a deadly weapon for purposes of this section. That case involved the specific question of whether an unloaded gun would constitute a deadly weapon under the statute. The court discussed the rationale behind the new law and determined that proof that an unloaded gun was used in a robbery is sufficient to sustain a conviction for aggravated robbery. This court, in reversing the Court of Appeals, stated, at pages 38-39, as follows:

"A holding that the use of an unloaded gun by a robber does not support a conviction for aggravated rob-

bery ' "***would be practically to render the statute unenforceable."***To require the State to prove that the instrumentalities used by the robbers in accomplishing a robbery, such as revolvers***which ordinarily are so used only when loaded and capable of dealing out injury and death, are in fact what they purport to be from the very nature of the use made of them by the robbers, would defeat the object and purpose of***[the statute] because it is quite unusual to apprehend the robbers in the act and before they have had an opportunity to carry away with them from the scene of the crime the weapons used by them to effect its perpetration.' *State* v. *Kowertz* (1930), 324 Mo. 748, 754, 25 S.W. 2d 113."

Chief Justice O'Neill pointed out in *Meek, supra,* at page 39, that R. C. 2923.11(B), defining "firearm," was "indicative of the fact that the General Assembly did not intend that a conviction for aggravated robbery require proof that the weapon used be loaded." R. C. 2923.11(B) specifically provides that:

"'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."

Therefore, it is clear that this court has determined that a gun designed for use as a weapon may be considered a "deadly weapon" for purposes of sustaining a conviction of aggravated robbery, even though such gun is found to have been unloaded at the time of the robbery.

The court, in *Meek,* was not called upon to decide, nor did it decide, whether, in the absence of the alleged gun, it was necessary for the state to prove, by direct evidence, the capability of the gun to fire projectiles in order for it to be classified as a "deadly weapon." In determining this issue, we apply the general evidentiary rule that when direct evidence of a fact, in this instance the use of a deadly weapon, is not obtainable, proper inferences may be drawn from the presentation of other facts. Here, testimony was presented as to the use of a gun during the robbery which allowed the jury to make an inference that the defendant used a deadly weapon.

Where there is credible evidence that there was a gun used in a robbery, and when that gun is not available for testing, it

is not necessary for the state to prove that the gun could actually fire a projectile in order to sustain a conviction for aggravated robbery. A jury is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use. The state should not be required to produce the weapon in order to secure a conviction for aggravated robbery. To do so would emasculate R. C. 2911.01, and reward those armed robbers who have the fortune to escape the scene of the crime, and the foresight to destroy or conceal the weapons before they are apprehended.

Appellee places great weight upon the fact that although a gunshot was heard, no projectile was discovered by the police. He then argues that this fact supports a reasonable inference that the gun used was, in actuality, incapable of expelling a projectile and was possibly a starter pistol. While this may be true, it is the jury's function to weigh competing inferences, and to accept the one which it finds to be more reasonable. The jury in this cause properly exercised its prerogative, and an appellate court is bound thereby, absent a showing of unreasonableness. Such a showing has not been made in this cause.

We conclude that, for purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all the reasonable inferences from the evidence presented that the robbery was committed with the use of a gun, and it is not necessary that the prosecution prove that the gun was capable of firing a projectile.

Based upon all the foregoing, the judgment of the Court of Appeals is hereby reversed.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.