OPINION
Appellant Sean Tessanne appeals a judgment of the Stark County Common Pleas Court convicting him of Aggravated Robbery (R.C. 2911.01(A)(1)):
ASSIGNMENTS OF ERROR:
 I. THE JURY VERDICT FINDING THE DEFENDANT/APPELLANT GUILTY OF AGGRAVATED ROBBERY WAS NOT SUPPORTED BY LEGALLY SUFFICIENT [EVIDENCE] AS THERE WAS INSUFFICIENT EVIDENCE THAT A DEADLY WEAPON WAS USED IN THE COMMISSION OF THE CRIME.
 II. THE JURY VERDICT OF GUILTY ON THE CHARGE OF AGGRAVATED ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE FAILURE OF DEFENDANT/APPELLANT TESSANNE'S TRIAL COUNSEL TO MOVE FOR AN ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AND AT THE CLOSE OF ALL THE EVIDENCE ON THE CHARGE OF AGGRAVATED ROBBERY WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE ON THE ELEMENT OF "DEADLY WEAPON" DENIED THE APPELLANT HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
On the afternoon of July 25, 1997, James DeVault, an employee of the Massillon Independent, received a page from Dana Cottrell. DeVault was asked to meet Cottrell, Scott Rose, and appellant underneath the Cherry Street viaduct during his break.
Cottrell and appellant had appeared at Rose's house. Rose showed them his inoperable BB gun. Appellant took the gun when the threesome left for the viaduct.
DeVault rode his bike to the viaduct, and saw the three boys underneath it. He parked his bike, and joined them in conversation. Appellant told DeVault that he wanted either DeVault's bike or his pager. Initially, DeVault thought appellant was joking, and told him that he could have neither. Appellant repeated his request, and DeVault again responded that appellant could have neither. When appellant repeated his request a third time, he added, "Well, I have a gun. If you don't think I will shoot you, I will shoot you." Appellant then received a page, and the group left for a nearby gas station in order for appellant to return the page.
After appellant made the phone call, the group returned to the viaduct. Cottrell told DeVault there was going to be a fight between DeVault and appellant. The group began throwing rocks at the bridge's support beams. Cottrell suddenly told the group that he wanted to fight, and appellant responded that he would fight him. Appellant pulled the gun from behind his back and put it to Cottrell's chest. Cottrell backed away, and told appellant that he did not want to fight that way.
After witnessing this confrontation, DeVault got on his bike. Appellant asked DeVault if he could ride the bike. When DeVault declined to let appellant ride the bike, appellant offered to let DeVault hold his pager while he rode the bike. Eventually, the two swapped pagers. When they both asked for their pagers back, appellant handed DeVault pager to Cottrell. DeVault knocked the pager out of their hands and retrieved it. DeVault decided that it was time to leave.
Cottrell stepped in front of DeVault and informed him that he was not going to leave, and they wanted either his pager or his bike. DeVault told them that they should go and find a job. Cottrell continued to stand in front of DeVault, blocking his exit. Cottrell and appellant then grabbed the handbars of the bike, and attempted to pull it away. The struggle lasted ten to fifteen minutes. Both Cottrell and appellant tried to hit DeVault while they were wrestling for the bike.
A passerby stopped his vehicle when he noticed the struggle. He asked the boys what was going on. DeVault told the man that they were trying to steal his bike, and he needed help. The man told DeVault he would drive him to the police station. DeVault left his bike with Cottrell and appellant, telling them would see them in jail.
Appellant was initially charged in Juvenile Court with Delinquency By Reason of Aggravated Robbery, with a firearm specification. Upon completion of a bindover proceeding, the Juvenile Court relinquished jurisdiction and bound the case over to the Stark County Common Pleas Court for prosecution of appellant as an adult. Appellant was indicted by the Stark County Grand Jury with one count of Aggravated Robbery. The case proceeded to jury trial in the Stark County Common Pleas Court. Appellant was convicted as charged, and sentenced to a term of imprisonment of three years.
 I.
Appellant argues that there was insufficient evidence to demonstrate that he had a deadly weapon on or about his person or under his control. He argues that the inoperable BB gun was not a deadly weapon.
With respect to sufficiency of the evidence, "sufficiency" is a term of art applied to the legal standard used to determine whether the case may go to the jury, or whether the evidence is legally sufficient to support the jury's verdict as a matter of law. State vs. Thompkins (1997), 78 Ohio St.3d 380, 386-87. Whether the evidence is legally sufficient to support a conviction is a question of law, and a conviction based on legally insufficient evidence constitutes a denial of due process. Id. at 387.
"Deadly weapon" is defined by R.C. 2923.11(A) to include any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon. The Ohio Supreme Court has stated in dicta that one may use a BB gun in the commission of a theft offense, and be found guilty of Aggravated Robbery. State vs.Gaines (1989), 46 Ohio St.3d 65, 68. The jury is entitled to infer the deadly nature of an instrument from the facts and circumstances of its use. State vs. Vondenberg (1980), 61 Ohio St.2d 285, syllabus. A toy gun is capable of inflicting death because of its possible use as a bludgeon. State vs. Hicks
(1984), 14 Ohio App.3d 25, 26.
This court has previously held that a BB gun may constitute a deadly weapon, and its use may support an Aggravated Robbery conviction. In State vs. McKnight (February 5, 1996), Stark App. No. 1995CA00241, unreported, the defendant used a BB gun to rob a convenience store. On appeal, the defendant challenged the sufficiency and weight of the evidence with regard to the deadly nature of the BB gun. In considering this claim, this court held that because the BB gun could be used as a bludgeon, it can be a deadly weapon within the meaning of R.C. 2923.11(A), and the defendant could be convicted of Aggravated Robbery. Id. at 2.
In the instant case, appellant pointed the BB gun at Cottrell and threatened to fight him with it. When he later began to ask DeVault for his bike, appellant threatened to shoot DeVault if he did not turn over the bike. This is evidence of appellant's intent to use the gun as a weapon. This intent, coupled with the potential use of the gun as a bludgeon, constituted sufficient evidence that the gun was a deadly weapon as defined by R.C.2923.11(A).
The first Assignment of Error is overruled.
 II.
Appellant argues that the verdict is against the manifest weight of the evidence, as the inoperable BB gun was not a deadly weapon.
Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. Thompkins,78 Ohio St. 3d at 287. Weight is not a question of mathematics, but depends on its effect in inducing belief. Id. In considering a claim that a judgment is against the weight of the evidence, we must review the entire record, weigh the evidence in all reasonable inferences, consider the credibility of witnesses, and determine whether when resolving conflicts in the evidence, the jury clearly lost its way. Id. at 387. The discretionary power to grant a new trial should be exercised only in the exceptional case when the evidence weighs heavily against conviction. Id.
As outlined in Assignment of Error I. above, there was sufficient evidence presented from which the jury could conclude beyond a reasonable doubt that the BB gun constituted a deadly weapon as defined by the statute.
The second Assignment of Error is overruled.
 III.
Appellant argues that counsel was ineffective for failing to move for a directed verdict of acquittal pursuant to Crim.R. 29(A) at the close of the State's case-in-chief, and at the close of trial. Appellant renews his argument that the State did not present sufficient evidence that the weapon was a deadly weapon.
In order to establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, and that he was prejudiced by such performance. Strickland vs.Washington (1984), 466 U.S. 668, 687. To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.
Appellant has not demonstrated that the result of the proceeding would have been different had counsel moved for a judgment of acquittal pursuant to Crim.R. 29(A). As discussed in Assignment of Error I. above, there was sufficient evidence presented to allow the question of whether the BB gun was a deadly weapon to go to the jury. As appellant has not demonstrated a reasonable probability that the motion would have been granted, counsel was not ineffective for failing to so move.
The third Assignment of Error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
By: Reader, J. and Wise, J. concur.
Hoffman, P. J. dissents.