DECISION AND JUDGMENT ENTRY
{¶ 1} Anthony D. Umphries appeals from his conviction on a charge of aggravated robbery, arguing that the court erred in denying his Crim.R. 29(A) motion for judgment of acquittal. He contends the state failed to produce sufficient evidence for an essential element of aggravated robbery, i.e. that he used a deadly weapon. Because the state presented evidence that Umphries held a piece of metal up to the clerk's chin, which she described as either a knife or a screwdriver, a reasonable jury could infer that this instrument was capable of inflicting death by stabbing or beating the clerk. A reasonable juror might also have concluded the metal object was a gun barrel given the appellant's threat to shoot the clerk unless she opened the safe. Thus, we affirm Umphries' conviction.
 {¶ 2} In late 2001, the Ross County Grand Jury indicted Anthony Umphries on one count of aggravated robbery under R.C. 2911.01.[1]
After a not guilty plea, this case proceeded to trial where Misty Walter identified Anthony Umphries as the person who robbed the Chillicothe Dairy Mart where she was working in October 2001. Ms. Walter testified that Umphries came into the store around 10:45 p.m., brought a twenty-four pack of Bud Light to the register and asked for a carton of cigarettes and a lottery ticket. Ms. Walter stated that she turned toward the register to ring the items up when Umphries grabbed her from behind, put a shiny, silver piece of metal up to her chin, and demanded that she open the cash register. Ms. Walter speculated that the piece of metal was either a knife or a screwdriver and that it was five to six inches long. Ms. Walter also stated that Umphries did not threaten to hit her or cut her with the piece of metal but he did tell her that he would shoot her. However, Ms. Walter stated that she never saw a gun. After she opened the cash register, Umphries instructed her to lie face down on the floor. While on the floor, Umphries told Ms. Walter to open the safe. Ms. Walter replied that she could push a button to release some of the money but she could not open the safe. Umphries allowed her to get up and push the button and then instructed her to lie back down on the floor. Ms. Walter did as Umphries instructed and he left the store without further incident. After waiting a few minutes, Ms. Walter got up and called 911.
 {¶ 3} Chillicothe Police Department Detective Joseph Weathersbee, who investigated the robbery, also testified at trial. Detective Weathersbee stated that Ms. Walter's testimony was consistent with what she told him immediately after the robbery. Specifically, she told him that the person who robbed her held a shiny, silver piece of metal up to her chin and demanded that she open the cash register. Detective Weathersbee also verified that Ms. Walter speculated that the piece of metal was either a knife or a screwdriver, but she could not be sure except to say that it was a piece of metal. Detective Weathersbee stated that a few days after the robbery he received an anonymous tip indicating that Umphries was the person who robbed the Chillicothe Dairy Mart. After receiving this tip, Detective Weathersbee showed Ms. Walter a photo array that included Umphries' picture. According to Weathersbee, Ms. Walter instantly identified Umphries as the person who robbed her. However, Detective Weathersbee's investigation failed to locate any type of a weapon.
 {¶ 4} At the close of the state's case, Umphries made a Crim.R. 29(A) motion for judgment of acquittal, which the court denied. Then, Umphries called one witness, his girlfriend, Amanda Littler. Ms. Littler testified that she was with Umphries on the night of the robbery, that they had been drinking and that Umphries went across the street around 11 p.m. to prepare his mother's diabetes shot. Ms. Littler stated that she was unsure how long Umphries was gone but it was not very long. Following this testimony, Umphries rested his case and renewed his Crim.R. 29 motion for judgment of acquittal. Once again, the court denied the motion.
 {¶ 5} After the jury began its deliberations, it asked three questions regarding the deadly weapon element of the aggravated robbery offense. For all three questions, the court, with counsel present, re-read the original jury instructions on deadly weapons. Later, the jury returned its verdict finding Umphries guilty of aggravated robbery and the court sentenced him to seven years in prison. Umphries filed this appeal and assigned the following error: The trial court erred in overruling the defendant's motion for judgment of acquittal pursuant to Ohio Criminal Rule 29(A).
 {¶ 6} Crim.R. 29(A)[2] motions for acquittal test the sufficiency of the evidence presented at trial. State v. Williams,74 Ohio St.3d 569, 576, 1996-Ohio-91, 660 N.E.2d 724; State v. Miley
(1996), 114 Ohio App.3d 738, 742, 684 N.E.2d 102. Crim.R. 29(A) requires a court to enter a judgment of acquittal when the state's evidence is insufficient to sustain a conviction. But the court may not grant a defendant's Crim.R. 29(A) motion "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. In making this determination, the court must construe the evidence in the light most favorable to the prosecution. Williams, 74 Ohio St.3d at 576. We undertake a de novo review of the trial court's decision on a Crim.R. 29(A) motion and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. If any rational trier of fact could have found the essential elements of an offense proven beyond a reasonable doubt, we will not disturb the conviction. Williams, 74 Ohio St.3d at 576; Jenks,61 Ohio St.3d at 273.
 {¶ 7} R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Here, Umphries challenges only the first element, i.e., whether the piece of metal was capable of inflicting death. Thus, he concedes the state presented sufficient evidence for a reasonable jury to conclude that the metal object was "possessed, carried, or used as a weapon." Therefore, our review will focus on whether a reasonable juror could conclude that the metal object was capable of inflicting death.
 {¶ 8} The victim testified that the metal object that the appellant held to her neck looked like a knife or a screwdriver. It almost follows without the need to cite legal authority that either a knife or a screwdriver is capable of inflicting a deadly wound. This is especially so if either one were plunged into the victim's neck. See State v.Jordan, Scioto App. No. 00CA2748, 2001-Ohio-2562 (stating that a knife is a deadly weapon) and State v. Hubb (Mar. 29, 1996), Franklin App. No. 95APA08-1025 (stating that a screwdriver is a deadly weapon).
 {¶ 9} Moreover, a jury may "infer the deadly nature of an instrument from the facts and circumstances of its use." State v.Vondenberg (1980), 61 Ohio St.2d 285, 289, 401 N.E.2d 437. Thus, courts have held juries could infer that objects like an unloaded or inoperable firearm, toy metal gun and a three to five pound metal wrench are deadly weapons. See, e.g., Vondenberg, supra, (stating that an unloaded gun may be considered a deadly weapon); State v. Bonner (1997),118 Ohio App.3d 815, 823, 694 N.E.2d 125 (stating that a toy metal gun could be used as a deadly weapon because it could be used as a bludgeon); and State v. Powers (1995), 106 Ohio App.3d 696, 701-02,667 N.E.2d 32 (stating that a three to five pound metal wrench disguised as a gun could be a deadly weapon). See, also, 27 Ohio Jur.3d, Criminal Law § 1218 (discussing deadly weapons). See also State v. Green
(1996), 117 Ohio App.3d 644, 651, 691 N.E.2d 316, where the First District held: "where appellant made several threats to `blow the heads off' the victims, with his hand or hands either concealed or used in a manner consistent with having a concealed gun, and where appellant was able to compel the surrender of the money based upon his actions and the victims' suspicions that he was armed and could carry out his threat, the state sufficiently proved the element of `deadly weapon' required by the statute."
 {¶ 10} Here, the state presented evidence that Umphries held a five to six inch piece of metal to Ms. Walter's chin and told her to open the cash register. Umphries also threatened to "shoot" Ms. Walter. Thus, a reasonable jury could infer that a person who holds a five to six inch piece of metal to someone's chin, threatens to shoot them and demands that they open a cash register possesses a gun.
 {¶ 11} A reasonable jury could have concluded either that the piece of metal Ms. Walter saw was actually the barrel of a gun or that Umphries would use the "knife or screwdriver" to stab Ms. Walter if she did not open the cash register. In either situation, a reasonable jury, viewing the facts in the light most favorable to the state, could have concluded that the piece of metal in Umphries' possession was capable of inflicting death. Therefore, the state presented sufficient evidence that Umphries robbed the Dairy Mart with a deadly weapon. Umphries' assignment of error is overruled.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J.: Not Participating[3].
Abele, J.: Concurs in Judgment and Opinion.
[1] R.C. 2911.01 states in part: "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
[2] Crim.R. 29(A) states: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case. "
[3] This case was submitted to Judge Evans four weeks prior to its release. Internal court case management policy requires some response within fifteen days after submission for a vote. In light of the length of time without a response of any kind, the other members of the panel have proceeded accordingly.