DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court jury verdict. Appellant, Timothy Literal, was sentenced to serve an aggregate term of eighteen years in prison[1], in addition to a period of post-release control, after a jury found him guilty of robbery, a felony of the third degree, in violation of R.C. 2911.02(A)(3), aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), possession of drugs, a *Page 2 
felony of the second degree, in violation of R.C. 2925.11(A) and (C)(4)(c), and trafficking in drugs, a felony of the second degree, in violation of R.C. 2925.03(A)(2) and (C)(1)(d). On appeal, Appellant asserts that (1) the trial court erred in sentencing him on trafficking in drugs and possession of drugs when the offenses are allied offenses of similar import; (2) the trial court erred when it exercised jurisdiction over the charge of trafficking in drugs; (3) the trial court erred when it entered judgment against him for the charge of trafficking in drugs when the evidence was not supported by sufficient evidence and also was against the manifest weight of the evidence; and (4) the trial court erred when it entered judgment against him for the charge of aggravated robbery when the evidence was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 2} Although possession of drugs and trafficking in drugs, in violation of R.C. 2925.11(A) and R.C. 2925.03(A)(2) respectively, are allied offenses of similar import, because each crime was committed with a separate animus, we conclude that the trial court did not err in convicting and sentencing Appellant on both crimes. However, in light of our disposition of Appellant's second assignment of error, which concludes that the trial court lacked jurisdiction over the charge of drug trafficking, we vacate Appellant's conviction and sentence as to that charge. Because we *Page 3 
find that the trial court did not have jurisdiction over the drug trafficking offense, all elements of which were committed in the state of Kentucky, we sustain Appellant's second assignment of error and vacate his conviction and sentence as to that charge. In light of our disposition of Appellant's second assignment of error, Appellant's third assignment of error has been rendered moot. Finally, because we find that the State presented substantial evidence upon which a reasonable trier of fact could find that the State established all the essential elements of the aggravated robbery beyond a reasonable doubt, we overrule Appellant's fourth assignment of error. Accordingly, we affirm in part and vacate in part the judgment of the trial court.
 FACTS {¶ 3} On June 10, 2007, Appellant was indicted for robbery, a felony of the third degree, in violation of R.C. 2911.02(A)(3), aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), possession of drugs, a felony of the second degree, in violation of R.C. 2925.11(A) and (C)(4)(c), and trafficking in drugs, a felony of the second degree, in violation of R.C. 2925.03(A)(2) and (C)(1)(d) as a result of events occurring at a CVS pharmacy in Portsmouth, Ohio, on June 3, 2007, and June 4, 2008, in South Shore, Kentucky. Appellant pled not guilty to all of the charges and the *Page 4 
matter proceeded to trial in the Scioto County Court of Common Pleas on December 10, 2007.
 {¶ 4} At trial, the State presented witness, Chad Stockham, a pharmacist that was on duty at CVS the day of the robbery. Stockham testified that on June 3, 2007, Appellant entered a CVS pharmacy in Portsmouth, Ohio, wearing a black and while flannel jacket and cut off shorts, approached the pharmacy counter and asked for a pharmacy consult. Appellant then handed Stockham a note indicating that this was a robbery and requesting oxycodone, 15 and 30 milligram tablets, as well as oxycontin tablets. Stockham testified that the note further indicated that Appellant possessed a gun and also instructed Stockham not to hit any alarms or try to contact authorities for at least five minutes, as there was another individual in the front of the store who also had a gun, and who would remain in the store for five minutes after the robbery. Stockham further testified that during the time he was reading the note, Appellant stood at the counter with his hand near his waist, where there appeared to be a bulge under his jacket. Stockham testified that he believed Appellant had a gun during the robbery.
 {¶ 5} Stockham testified that he did not have the drugs in the specific milligrams requested by Appellant, but that he did give Appellant a brown bag containing 200 20mg. oxycodone tablets, 140 40mg. oxycodone tablets, *Page 5 
and 51 80mg. oxycontin tablets. After receiving the brown bag containing the drugs, Appellant exited the store. A review of the surveillance tape from the store that day indicates that Stockham and the other pharmacy employees remained in the pharmacy area for several minutes, looking towards the front of the store and even sending one employee to the front to see if there was anyone who appeared to be linked with the robbery in the front of the store. When it appeared that there was no one else there, the authorities were notified. Additionally, the State offered testimony by a pharmacy tech who was working that day indicating that just after the robbery, she viewed, out the drive-thru window, a black Mazda erratically exiting the parking lot and heading south on route 23, towards Kentucky.
 {¶ 6} In an effort to locate Appellant, the surveillance tape of the robbery was released to the media. Investigator Timberlake, another of the State's witnesses, testified that he saw the replay of the tape on the local news and recognized Appellant, as he had just worked with him the week before as part of a controlled purchase of drugs from drug dealer, Ashley Underwood. Investigator Timberlake testified that he attempted to contact Appellant several times, without success, and then finally arranged to have Underwood contact Appellant in an effort to locate him. *Page 6 
 {¶ 7} Underwood testified at trial that he called Appellant from his cell phone while at his mother's house in Portsmouth, Ohio, and arranged to meet Appellant at a Speedway in South Shore, Kentucky, to purchase 30 80mg. "oxys." Underwood testified that while they discussed a price of $35.00 per tablet, the two agreed to discuss a deal once they met, because Appellant actually owed Underwood money. Underwood testified that an 80mg. "oxy" usually sells for $80.00 on the street.
 {¶ 8} In conjunction with Jason Bryant, South Shore police officer, Investigator Timberlake apprehended Appellant at the Speedway in South Shore, Kentucky later that day. Upon searching Appellant's black truck, Investigator Timberlake found the jacket Appellant wore during the robbery, as well as 30 80mg. oxycodone tablets, 175 20 mg. oxycodone tablets, and 129 40mg. oxycodone tablets. 24 of the 80mg. oxycodone tablets that were found were packaged in cut off fingers from rubber gloves that were tied together on the ends. The other six were wrapped in cellophane from a cigarette package.
 {¶ 9} After a two-day trial, Appellant was convicted of robbery, aggravated robbery, possession of drugs and trafficking in drugs and sentenced to an aggregate term of eighteen years in prison. It is from these *Page 7 
convictions and sentences that Appellant now brings his timely appeal, assigning the following errors for our review.
 ASSIGNMENTS OF ERROR "I. THE TRIAL COURT ERRED IN SENTENCING APPELLANT ON TRAFFICKING IN DRUGS AND POSSESSION OF DRUGS WHEN THE OFFENSES ARE ALLIED OFFENSES OF SIMILAR IMPORT.
 II. THE TRIAL COURT ERRED WHEN IT EXERCISED JURISDICTION OVER THE CHARGE OF TRAFFICKING IN DRUGS.
 III. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT FOR THE CHARGE OF TRAFFICKING IN DRUGS WHEN THE EVIDENCE [SIC] WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN A CONVICTION.
 IV. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT FOR THE CHARGE OF AGGRAVATED ROBBERY WHEN THE EVIDENCE [SIC] WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN A CONVICTION."
 ASSIGNMENT OF ERROR II {¶ 10} Because it is dispositive of several other issues raised in this appeal, we begin by addressing Appellant's second assignment of error, out of order. In his second assignment of error, Appellant contends that the trial court erred when it exercised jurisdiction over the charge of drug trafficking, in violation of R.C. 2925.03(A)(2). For the following reasons, we agree. *Page 8 
 {¶ 11} Ohio's criminal jurisdiction statute, R.C. 2901.11 provides in (A)(1) that a person is subject to criminal prosecution and punishment in this state if "the person commits an offense under the laws of this state, any element of which takes place in this state." Here, the State alleged that Appellant trafficked in drugs. R.C. 2925.03 Trafficking offenses provides that: (A) No person shall knowingly do any of the following:
 (1) Sell or offer to sell a controlled substance;
 (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.
 {¶ 12} Appellant was indicted and tried for drug trafficking, in violation of R.C. 2925.03(A)(2) only. Appellant denies that he trafficked in drugs and also argues that the trial court lacked jurisdiction over this crime because, assuming arguendo that it was committed, it was committed in the state of Kentucky, rather than Ohio. The State argues that the trial court had jurisdiction over the matter by virtue of the phone call that was placed by Underwood, a known dealer of drugs in Ohio, while in Ohio, to Appellant, while in Kentucky, which negotiated the transfer or sale of the drugs to Underwood. In support of its argument, the State relies on State v. Campa, Hamilton App. No. C-010254, 2002-Ohio-1932, which reasoned that "[i]n a *Page 9 
drug-trafficking case an offer to sell drugs over the phone to a person in Ohio is sufficient to establish jurisdiction, even if the one offering to sell the drugs is outside the state."
 {¶ 13} A review of Campa indicates that Campa was charged under R.C. 2925.03(A)(1) for selling or offering to sell drugs, rather than R.C. 2925.03(A)(2), which Appellant was charged under. Thus, an element of drug trafficking under R.C. 2925.03(A)(1), offering to sell drugs, was committed in, or at least had a significant link to, Ohio. In the case at bar, Appellant was charged with drug trafficking under R.C. 2925.03(A)(2), which involves a different analysis and which is distinguishable from the facts of Campa. Here, although a phone call did take place and although Appellant was ready and willing to sell or transfer drugs to Underwood, Appellant was not charged under RC. 2925.03(A)(1) and selling or offering to sell drugs is not an element that must be proven under R.C. 2925.03.(A)(2). In fact, the evidence reveals, with respect to the requirements of (A)(2), that Appellant individually prepared or packaged, transported and attempted to deliver the controlled substances at issue all in the State of Kentucky, not Ohio. The only action linking the drug trafficking charge to Ohio was the fact that the phone call with Underwood took place *Page 10 
while Underwood was in Ohio.[2] However, as set forth above, Appellant was not charged with selling or offering to sell to Underwood under R.C. 2925.03(A)(1).
 {¶ 14} Because no element of R.C. 2925.03(A)(2) was committed in the State of Ohio, we conclude that the trial court improperly exercised jurisdiction over that crime and that Appellant's conviction and sentence for that crime must be vacated. Accordingly, we sustain Appellant's second assignment of error and vacate Appellant's conviction and sentence for drug trafficking, in violation of R.C. 2925.03(A)(2).
 ASSIGNMENT OF ERROR I {¶ 15} In his first assignment of error, Appellant contends that the trial court erred in sentencing him on trafficking in drugs and possession of drugs when the offenses are allied offenses of similar import. Appellant argues that possession of drugs and trafficking in drugs are allied offenses of similar import which must be merged for purposes of sentencing, citing State v. Cabrales, 118 Ohio St.3d 54,2008-Ohio-1625, 886 N.E.2d 181, in support. The State argues that while the offenses currently at issue have, in *Page 11 
fact, been determined to be allied offenses of similar import, based on the reasoning set forth in Cabrales, because each offense was committed with a separate animus, Appellant may be convicted and sentenced on both offenses.
 {¶ 16} In light of our disposition of Appellant's second assignment of error, which vacated Appellant's conviction and sentence for drug trafficking based upon our conclusion that the trial court did not have jurisdiction to consider, convict or sentence Appellant on that charge, this assignment of error has essentially been rendered moot. Accordingly, with the exception of our brief analysis contained in the above footnote related to our analysis of Appellant's second assignment of error, there is no need to further address the arguments raised under this assignment of error.
 ASSIGNMENT OF ERROR III {¶ 17} In his third assignment of error, Appellant contends that the trial court erred when it entered judgment against him for the charge of trafficking in drugs, arguing that the conviction was based upon insufficient evidence and was against the manifest weight of the evidence. As with Appellant's first assignment of error, in light of our disposition of Appellant's second assignment of error, this assignment of error has been rendered moot. *Page 12 
 ASSIGNMENT OF ERROR IV {¶ 18} In his fourth assignment of error, Appellant contends that the trial court erred when it entered judgment against him for the charge of aggravated robbery, arguing that the conviction was based upon insufficient evidence and was against the manifest weight of the evidence. Before we consider the particular facts before us, we must first consider the proper standard in which we must review a challenge to the sufficiency and weight of the evidence.
 {¶ 19} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781.
 {¶ 20} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175, *Page 13 
485 N.E.2d 717. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact.State v. Thomas (1982), 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356;State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 21} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks
(1992), 78 Ohio App.3d 206, 214, 604 N.E.2d 219; State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v.Garrow (1995), 103 Ohio App.3d 368, 370-71, 659 N.E.2d 814;Martin at 175. *Page 14 
 {¶ 22} "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks at paragraph one of the syllabus.
 {¶ 23} Here, the state alleged that Appellant violated R.C.
2911.01(A)(1), which provides in relevant part that
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 {¶ 24} In the case at bar, Appellant readily admits that he robbed a CVS pharmacy in order to satisfy his drug habit. However, he denies that he possessed or indicated that he possessed a gun during the robbery. Specifically Appellant denies that the note he handed to the CVS pharmacist indicated that he possessed a gun. Appellant further argues that statements *Page 15 
he made to arresting officers subsequent to his arrest stating he did not have a gun during the robbery, as well as the fact that no gun was ever recovered, support his argument that he did not have a gun.
 {¶ 25} At trial, the State presented evidence to the contrary through the testimony of Chad Stockham, the CVS pharmacist working at the counter on the day of the robbery. Stockham testified that Appellant approached him at the pharmacy and handed him a note indicating that he had a gun and requesting oxycodone and oxycontin. Stockham further testified that the note instructed him not to hit any alarms or contact the police, and that there was another person in the front of the store with a gun who would remain in the store for five minutes after the robbery. Stockham also testified that during this time, Appellant stood with his hand against his waist showing him "that he had something underneath his jacket," where Appellant testified that he could see a bulge. Appellant testified that he believed that Appellant possessed a gun during the commission of the robbery. Further, the video recording of the robbery indicates that the pharmacists' actions after Appellant left the store conformed to their testimony regarding the belief that there was another person in the front of the store who also had a gun and would remain in the store for five minutes after the robbery. *Page 16 
 {¶ 26} Whether the state has presented sufficient evidence of the actual possession of a deadly weapon is judged based on the totality of the circumstances. State v. Vondenberg (1980), 61 Ohio St.2d 285,401 N.E.2d 437; State v. Green (1996), 117 Ohio App.3d 644, 691 N.E.2d 316;State v. Haynes, Hamilton App. No. C-020685, 2004-Ohio-762. AccordState v. Umphries, Ross App. No. 02CA2662, 2003-Ohio-599. As stated by the Supreme Court of Ohio, "[f]or purposes of establishing the crime of aggravated robbery, a jury is entitled to draw all reasonable inferences from the evidence presented that the robbery was committed with the use of a gun * * *." Vondenberg, syllabus. It is not necessary that the defendant had actually displayed the weapon in order to establish that he had possessed one. State v. Knight, Greene App. No. 2003 CA 14,2004-Ohio-1941. The factfinder may infer that the defendant possessed a deadly weapon based on his words and conduct. Id., relying on State v.Haskins, Erie App. No. E-01-016, 2003-Ohio-70.
 {¶ 27} Further, in Green, supra, the court upheld a conviction for aggravated robbery, reasoning that the deadly weapon element of the aggravated robbery statute was satisfied where the defendant acted as though he had a gun and the victims believed him. The court further reasoned that one who indicates by word and conduct that he has a gun in his possession *Page 17 
should not be entitled as a matter of law to the conclusion that such words and conduct have no meaning. Green at 651.
 {¶ 28} Thus, viewing this evidence in a light most favorable to the prosecution, in light of the foregoing caselaw, we find that a rational trier of fact could have found that the state proved the essential elements of aggravated robbery beyond a reasonable doubt. Specifically, any rational trier of fact could have found that Appellant robbed the CVS pharmacy and while doing so had a gun in his possession and/or control and indicated to the pharmacist that he possessed it. According to the testimony of Chad Stockham, he believed, as a result of Appellant's conduct, that Appellant possessed a gun during the commission of the robbery and he acted in accordance with that belief in waiting several minutes and checking out the front of the store before notifying authorities. Accordingly, we overrule Appellant's fourth assignment of error, as to the sufficiency challenge.
 {¶ 29} We find that this same evidence further constitutes substantial evidence upon which the jury could reasonably conclude that the state proved Appellant committed the crime of aggravated robbery beyond a reasonable doubt. Thus, after reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it *Page 18 
found Appellant guilty of aggravated robbery. Accordingly, we overrule Appellant's fourth assignment of error.
JUDGMENT VACATED IN PART AND AFFIRMED IN PART.
[1] Appellant was sentenced to a term of five years for robbery, a term of four years for trafficking in drugs, a term of five years for possession of drugs, and a term of nine years for aggravated robbery. The five year term for robbery was ordered to be served concurrently with the nine year term for aggravated robbery and the four year term for trafficking in drugs and the five year term for possession of drugs were each ordered to be served consecutively to the nine year term, for a total sentence of eighteen years.
[2] We are mindful of the fact that Appellant robbed a CVS pharmacy in Ohio in order to obtain the drugs at issue. However, although we do not formally reach the merits of Appellant's first assignment of error, which has essentially been rendered moot, we would have concluded, based on the facts before us, that Appellant's initial drug possession offense and subsequent drug trafficking offense were committed with a separate animus. Therefore, no argument can be made that the two offenses were committed as a single course of criminal conduct under R.C. 2901.12, Ohio's venue statute, which could have afforded the trial court jurisdiction or made Scioto County the proper venue for trial of the drug trafficking charge.