[Cite as *State v. Greeley*, 2018-Ohio-42.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 17CA0023-M |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| STEVEN M. GREELEY | COURT OF COMMON PLEAS |
| | COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 16CR0423 |

DECISION AND JOURNAL ENTRY

Dated: January 8, 2018

CALLAHAN, Judge.

{¶1} Defendant-Appellant, Steven Greeley, appeals from his conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Shortly after 3:00 a.m., the police responded to an attempted break-in call at a house on East Homestead Street in Medina. While inspecting the damage to the homeowner's back door, the police heard a series of loud banging noises and followed the noises to a nearby residence. There, they found Mr. Greeley wearing a latex glove and using a hammer to strike the back door of a vacant house. The police then arrested Mr. Greeley.

{¶3} A grand jury indicted Mr. Greeley on one count of attempted aggravated burglary. A jury trial took place, at the conclusion of which the jury found him guilty. The court sentenced him to five years in prison.

{¶4}    Mr. Greeley now appeals from his conviction and raises three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR NO. 1**

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE TO SUSTAIN CONVICTION. THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

{¶5}    In his first assignment of error, Mr. Greeley argues that the trial court erred by denying his Crim.R. 29 motion. Specifically, he contends that the State never proved the deadly weapon element of the aggravated burglary statute. This Court disagrees.

{¶6}    "'[This Court] review[s] a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶7}    The aggravated burglary statute provides that

[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present,

with purpose to commit in the structure * * * any criminal offense, if * * * [he] has a deadly weapon or dangerous ordnance on or about [his] person or under [his] control.

R.C. 2911.11(A)(2). An attempt occurs when a person "purposely or knowingly * * * engage[s] in conduct that, if successful, would constitute or result in [an] offense." R.C. 2923.02(A).

{¶8} A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). "In making this determination, '[t]he manner of use of the instrument is what is determinative.'" *State v. Norris*, 9th Dist. Summit No. 27630, 2016-Ohio-1526, ¶ 13, quoting *State v. Goodwin*, 6th Dist. Lucas No. L-12-1341, 2014-Ohio-2323, ¶ 33. "A jury is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use." *State v. Vondenberg*, 61 Ohio St.2d 285, 289 (1980). This Court previously has recognized that a hammer can be a deadly weapon. *See State v. Davis*, 9th Dist. Summit No. 22724, 2005-Ohio-6224, ¶ 25; *State v. Daniels*, 9th Dist. Lorain No. 03CA008261, 2004-Ohio-828, ¶ 17.

{¶9} The homeowner in this case, who resided on East Homestead Street, testified that her dogs woke her from sleep one night when they began barking. Once awake, she heard loud banging noises coming from the back of her house. Because the noises sounded like someone trying to break in, the homeowner immediately called 911, turned on one of the lights in her house, and briefly looked out a back window. When she looked outside, she saw someone leaving her back porch. Due to the darkness, she was unable to note any identifying characteristics about the person.

{¶10} Officer Michael Lyon and Officer Dan Winebrenner responded to the homeowner's 911 call within a few minutes and spoke with her outside. Both officers testified

that they were inspecting her back door when they heard loud banging noises coming from nearby. The officers then ran through her backyard in the direction of the noises and found a man they later identified as Mr. Greeley. Officer Winebrenner testified that he saw Mr. Greeley using a hammer to bang on the rear door of another house. He noted that Mr. Greeley was wearing a latex glove on his left hand and holding the hammer in his right hand. When he began shouting at Mr. Greeley, Mr. Greeley dropped the hammer, removed the latex glove, and dropped the glove. Officer Lyon testified that Mr. Greeley also was wearing a backpack that was empty except for a pair of needle nose pliers and a crescent wrench. According to Officer Lyon, Mr. Greeley said he was wearing the backpack to carry beer. Mr. Greeley also claimed that he was present at the house to confront his girlfriend, whom he believed was having an affair.

{¶11} There was testimony that the house where the police found Mr. Greeley was just south of the homeowner's residence and that a portion of their backyards connected. The homeowner testified that there were fresh scratch marks on her back door, consistent with someone trying to pry it open. Detective John Wilson, who later investigated this incident, described the marks as strike marks, consistent with someone hitting the door to gain entry.

{¶12} Detective Wilson interviewed Mr. Greeley at the jail several hours after his arrest. During their conversation, Mr. Greeley made no mention of his girlfriend. Instead, he stated that he was knocking on doors that night to ask people for condiments because he and his friends were trying to grill out. As for the hammer, Mr. Greeley stated that he carried it with him for protection. He specified: "that's what the motorcycle groups do, like each person has their thing" and the hammer was his. Though Mr. Greeley claimed that he never removed his hammer from his belt that night, he admitted that it was a weapon and that he probably should not have been carrying it.

{¶13}  Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt the elements of attempted aggravated burglary.  *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The police discovered Mr. Greeley holding a hammer and using it to bang on the back door of a house in close proximity to the homeowner's.  The incident took place within minutes of someone attempting to break into the homeowner's residence by striking at the back door. Accordingly, there was circumstantial evidence tending to show that Mr. Greeley perpetrated both acts.  *See id.* at paragraph one of the syllabus ("Circumstantial evidence and direct evidence inherently possess the same probative value * * *.").  Mr. Greeley freely admitted that he was in possession of a hammer that evening, and Officer Winebrenner saw him using it to strike the back door of the second house.  In other circumstances, the hammer might have constituted nothing more than a criminal tool.  Mr. Greeley, however, specifically admitted that the hammer was a weapon and that he carried it for protection.  As noted, in deciding whether an instrument constitutes a deadly weapon, "'[t]he manner of use of the instrument is what is determinative.'" *Norris*, 2016-Ohio-1526, at ¶ 13, quoting *Goodwin*, 2014-Ohio-2323, at ¶ 33.  Because Mr. Greeley admitted that he carried the hammer as a weapon, the jury could reasonably have concluded that it was a deadly weapon for purposes of the aggravated burglary statute.  *See* R.C. 2923.11(A).  *See also Vondenberg*, 61 Ohio St.2d at 289.  Thus, Mr. Greeley's argument that his conviction is based on insufficient evidence lacks merit.  His first assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} In his second assignment of error, Mr. Greeley argues that his attempted aggravated burglary conviction is against the manifest weight of the evidence. This Court disagrees.

{¶15} When a defendant argues that his conviction is against the weight of the evidence, this court must review all of the evidence before the trial court.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶16} Mr. Greeley argues that his conviction is against the manifest weight of the evidence because there was no evidence directly tying him to the alleged break-in attempt at the homeowner's residence. He notes that the police only discovered him at a nearby residence, not the homeowner's residence. Because there was no forensic evidence tying him to the attempted break-in at the homeowner's residence and no one saw him at that residence, he asserts that the jury lost its way by convicting him.

{¶17} As noted, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, 61 Ohio St.3d 259 at paragraph one of the syllabus. Although the State was unable to set forth any direct evidence linking Mr. Greeley to the

attempted break-in at the homeowner's residence, there was a wealth of circumstantial evidence to that effect. *See id.* The police found Mr. Greeley banging on the back door of a residence in close proximity to the homeowner's residence within minutes of her having heard someone attempting to break into her home. Mr. Greeley was wearing a latex glove and attempted to discard it when the police found him. He also had in his possession a hammer and a backpack containing only pliers and a wrench. There was testimony that the house Mr. Greeley was attempting to enter was owned, but vacant, and that the police found him just after 3:00 a.m. Moreover, there was evidence that he gave multiple, inconsistent explanations for his presence in the area that evening. Having reviewed the record, this Court cannot conclude that this is the exceptional case where the evidence weighs heavily against Mr. Greeley's conviction. *Otten* at 340. As such, his second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE COURT COMMITTED ERROR BY NOT PROVIDING A JURY INSTRUCTION WHICH WOULD REQUIRE THE JURY TO DETERMINE IF THE HAMMER WAS USED AS A DEADLY WEAPON.

{¶18} In his third assignment of error, Mr. Greeley argues that the trial court erred by not instructing the jurors that they had to consider, based on all the facts and circumstances, whether his hammer constituted a deadly weapon. For the following reasons, this Court rejects his argument.

{¶19} The record reflects that the trial court defined the term "deadly weapon" for the jury and specifically instructed:

A deadly weapon is any instrument, device or thing that has two characteristics. The first characteristic is that it is capable of inflicting or causing death. The second characteristic is in the alternative, either the instrument, device or thing was designed or specifically adapted for use as a weapon or it was possessed, carried or used in this case as a weapon. *These are questions of fact for you to decide.*

(Emphasis added.) Mr. Greeley has not explained why the foregoing instruction failed to adequately convey to the jurors that they had to decide the factual matter of whether his hammer constituted a deadly weapon. *See* App.R. 16(A)(7). Moreover, the record reflects that he did not object to the court's instructions or ask the court to issue an additional instruction.

{¶20} Because Mr. Greeley did not object or request any additional instruction regarding the deadly weapon element, he has forfeited all but plain error on appeal. *See State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 26. Mr. Greeley has not argued plain error, however, "and this Court will not create a plain error argument on his behalf." *State v. Roberts*, 9th Dist. Wayne No. 16AP0030, 2017-Ohio-9079, ¶ 16. Accordingly, Mr. Greeley's third assignment of error is overruled.

III.

{¶21} Mr. Greeley's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

RICHARD BARBERA, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.